IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| MENDO LOVE, | ) | CASE NO. 3:18CV2640 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | KATHLEEN B. BURKE |
| WARDEN BRIGHAM SLOAN, | ) | |
| | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Petitioner Mendo Love ("Petitioner" or "Love") brings this habeas corpus action pursuant to 28 U.S.C. § 2254.  Doc. 1.  Love is detained at the Lake Erie Correctional Institution, having pleaded guilty to three counts of aggravated possession of drugs in the Erie County, Ohio, Court of Common Pleas.  *State v. Love*, Case No. 2011-CR-310 (Erie Cty. Common Pleas Ct., filed February 12, 2013).  At sentencing, the trial court sentenced Love to thirty months on each count, two counts to be served concurrently and consecutively to the remaining count, for a total prison term of 5 years.  Doc. 8-1, p. 25.

On November 13, 2018, Love filed his Petition for Writ of Habeas Corpus setting forth six grounds for relief.  Doc. 1, pp. 5-14.  This matter has been referred to the undersigned Magistrate Judge for a Report and Recommendation pursuant to Local Rule 72.2.  As set forth more fully below, Love's grounds for relief are not cognizable and/or fail on the merits.  Thus, the undersigned recommends that his Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED**.

**I.  Background**

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, the state court's factual findings are presumed correct.  28 U.S.C. § 2254(e)(1).  The petitioner has the burden of rebutting that presumption by clear and convincing evidence.

1

28 U.S.C. § 2254(e)(1); *see also Railey v. Webb*, 540 F. 3d 393, 397 (6th Cir. 2008).

### A. State Court Action

On November 10, 2011, the Erie County grand jury indicted Love on six counts of drug offenses involving Oxymorphone and Oxycodone: count 1, preparation of drugs for sale, Oxymorphone (R.C. § 2925.03(A)(2)); count 2, aggravated possession of drugs, Oxymorphone (R.C. § 2925.11(A)); count 3, preparation of drugs for sale, Oxycodone (R.C. § 2925.03(A)(2)); count 4, aggravated possession of drugs, Oxycodone (R.C. § 2925.11(C)(1)(c)); count 5, preparation of drugs for sale, Oxycodone (R.C. § 2925.03(A)(2)); and count 6, aggravated possession of drugs, Oxycodone (R.C. § 2925.11(C)(1)(b)).  Doc. 8-1, pp. 6-8.  Love, through counsel, pleaded not guilty.  Doc. 8-1, p. 9.

On February 11, 2013, pursuant to a negotiated plea agreement, Love entered a plea of guilty to three counts of aggravated possession of drugs (counts 2, 4, 6).  Doc. 8-1, p. 13.  In exchange, the state dismissed the three remaining counts of preparation of drugs for sale.  Doc. 8-1, p. 13.  As part of the plea agreement, Love indicated that he understood that the maximum penalty was nine years in jail, and the parties' "Agreed '*Recommended*' Sentence" was three years in prison.  Doc. 8-1, pp. 13, 15 (emphasis in original).  The trial court accepted the guilty plea and scheduled a sentencing hearing for February 25, 2013.  Doc. 8-1, p. 15.

Love did not appear for sentencing.  Doc. 8-1, p. 16.  His counsel represented that Love would not appear and the trial court issued a warrant for his arrest.  Doc. 8-3; Doc. 8-1, pp. 16, 17.

Three years later, on February 9, 2016, Love was apprehended in Pennsylvania.  *State v. Love*, 2017 WL 2841683, at *1 (Ohio Ct. App. June 30, 2017).  He was brought back to the Erie County Court of Common Pleas and the trial court sentenced him on February 25, 2016, to thirty months on each count, two counts (involving Oxycodone) to be served concurrently and

consecutively to the remaining count (involving Oxymorphone), for a total prison term of 5 years. Doc. 8-1, p. 25.

### B. Direct Appeal

On April 13, 2016, Love, pro se, filed a notice of appeal and a motion for leave to file a delayed appeal to the Ohio Court of Appeals, Sixth District. Doc. 8-1, pp. 27, 36. On May 11, 2016, the Ohio Court of Appeals granted Love's motion for delayed appeal, (Doc. 8-1, pp. 57-59), and the trial court appointed him appellate counsel. Doc. 8-1, p. 60.

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967), asserting that he could not find any meritorious issues for appeal and requesting permission to withdraw from the case. Doc. 8-1, p. 61. He offered the following potential assignments of error:

> 1. The trial court erred by violating the appellant's constitutional rights pursuant to Criminal Rule 11 during the plea hearing.
>
> 2. Appellant received ineffective assistance of counsel during the plea hearing and the sentencing hearing.

Doc. 8-1, p. 68. Counsel advised Love that he could file his own brief, and Love submitted a pro se brief raising the following assignments of error:

> 1. The trial court breached the parties' plea agreement by imposing a prison term greater than three years.
>
> 2. The trial court abused its discretion by imposing a sentence contrary to law under R.C. §2953.08(D)(1).
>
> 3. The trial court abused its discretion and committed plain error in violation of Crim.R. 52(A) and (B) for failing to inform appellant that he could withdraw plea before sentencing.
>
> 4. Appellant was deprived of effective assistance of counsel in violation of his rights under the Fifth, Sixth, and Fourteenth Amendments to the United States Constitution and Article I, Section 10 of the Ohio Constitution, at Sentencing.

3

> 5. The trial court erred in ordering consecutive sentences in counts two, four, and six in this case as counts two, four, and six are allied offenses.

Doc. 8-1, p. 91.

The Ohio Court of Appeals conducted an independent examination of the record pursuant to *Anders* and considered the potential errors set forth by counsel and Love.  It concluded that the appeal was "wholly frivolous," permitted counsel to withdraw from representation, and affirmed the trial court's judgment on June 30, 2017.  Doc. 8-1, pp. 155-165.

On July 24, 2017, Love, pro se, filed a motion for reconsideration pursuant to Ohio R. App. P. 26(A), which the Ohio Court of Appeals denied on August 18, 2017.  Doc. 8-1, pp. 211, 221-224.

On August 14, 2017, Love, pro se, appealed to the Ohio Supreme Court, asserting the same claims he had raised in the Ohio Court of Appeals.  Doc. 8-1, pp. 170-171.  On December 6, 2017, the Ohio Supreme Court declined jurisdiction.  Doc. 8-1, p. 210.

### C. Motion for Jail Time Credit

On June 13, 2016, Love, pro se, moved for jail time credit for the 189 days he spent in Allegheny County Jail in Pennsylvania.  Doc. 8-1, p. 225.  On June 30, 2016, the trial court denied the motion, explaining that Love had been incarcerated in Pennsylvania in charges unrelated to his Ohio case.  Doc. 8-1, p. 230.  On July 21, 2016, Love filed a motion for reconsideration.  Doc. 8-1, p. 240-241.  The trial court did not rule on Love's motion.

On August 25, 2017, Love again moved for 189 days of jail time credit stemming from his incarceration in Pennsylvania.  Doc. 8-1, p. 243.  On September 12, 2017, the trial court denied Love's motion because Love had been incarcerated in Pennsylvania on charges unrelated to his Ohio case.  Doc. 8-1, p. 266.

Love, pro se, filed a motion to file a delayed appeal with the Ohio Court of Appeals, which was granted. Doc. 8-1, pp. 270, 281-283. Love asserted the following assignment of error:

> The trial court erred when it abused its discretion when it denied the appellant's motion for additional jail-time credit pursuant to the ruling in <u>State v. Fugate</u> and <u>State v. Caccamo</u>.

Doc. 8-1, pp. 284-285. On May 25, 2018, the Court of Appeals affirmed the trial court's ruling. Doc. 8-1, pp. 330-333.

On June 14, 2018, Love appealed to the Ohio Supreme Court. Doc. 8-1, p. 334. On August 29, 2018, the Ohio Supreme Court declined to accept jurisdiction. Doc. 8-1, p. 373.

**D. Federal Habeas Petition**

On November 13, 2018, Love, pro se, filed his Petition for a Writ of Habeas Corpus. Doc. 1. He listed the following grounds for relief:

> **Ground One**: The trial court violated Love's constitutional and due process rights under the Ohio and United States Constitution when it breached the plea agreement.
>
> **Ground Two**: Love was deprived of effective assistance of counsel in violation of his rights under the Fifth, Sixth, & Fourteenth Amendment to the United States Constitution and Article I, Section 10 of the Ohio Constitution during Love's sentencing hearing.
>
> **Ground Three**: The trial court abused its discretion and committed plain error in violation of Crim.R. 50(A) and (B) for failing to inform Love that he could withdraw plea before sentencing.
>
> **Ground Four**: The trial court erred in ordering consecutive sentences in counts two, four, and six in this case as counts two, four and six are allied offenses.
>
> **Ground Five**: The trial court abused its discretion by imposing a sentence contrary to law pursuant to R.C. 2953.08 (D)(1).
>
> **Ground Six**: The trial court erred when it abused its discretion when it denied Love's motion for additional jail-time credit pursuant to State v. Fugates and State v. Caccamo, supra.

Doc. 1, pp. 5-9, 14.  On February 19, 2019, Respondent filed a Return of Writ.  Doc. 8.  Love did not file a traverse and the time to do so has passed.  In the Return of Writ, Respondent argues that Love's grounds for relief are not cognizable and/or fail on the merits.  Doc. 10, pp. 7-11.

## II. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a petitioner must meet certain procedural requirements in order to have his claims reviewed in federal court.  *Smith v. Ohio Dep't of Rehab. & Corr.*, 463 F.3d 426, 430 (6th Cir. 2006).  In order to obtain habeas relief under 28 U.S.C. § 2254, a petitioner must show either that the state court decision (1) resulted in a decision contrary to, or involving an unreasonable application of, clearly established federal law as determined by the United States Supreme Court ("contrary to" clause); or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings ("unreasonable application" clause).  28 U.S.C. § 2254(d).

"Under the 'contrary to' clause, a federal habeas court may grant a writ if the state court arrives at a conclusion opposite to that reached by the [United States Supreme] Court on a question of law or [based on] a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412-413 (2000).  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from th[e] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."  *Id*. at 413.  "Clearly established federal law" refers to the holdings, not dicta, of the Supreme Court's decisions as of the time of the relevant state court decision, as well as legal principles and standards flowing from Supreme Court precedent.  *Id*. at 412; *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  A state court is not required to cite Supreme Court precedent or reflect an awareness of Supreme Court cases, "so long as neither the reasoning nor the result of

the state-court decision contradicts" such precedent. *Early v. Packer*, 537 U.S. 3, 8 (2002); *Lopez v. Wilson*, 426 F.3d 339, 358 (6th Cir. 2005). If the Supreme Court has not addressed the petitioner's specific claims, a reviewing district court cannot find that a state court acted contrary to, or unreasonably applied, Supreme Court precedent or clearly established federal law. *Carey v. Musladin*, 549 U.S. 70, 77 (2006).

In determining whether the state court's decision involved an unreasonable application of law, the court employs an objective standard. *Williams*, 529 U.S. at 409. "A state court's determination that a claim lacks merit precludes federal habeas review so long as 'fair-minded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)); *see also Bray v. Andrews*, 640 F.3d 731, 738 (6th Cir. 2011). "A state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

### III. Analysis

**A. Ground One fails on the merits**

In Ground One, Love argues that the trial court violated his due process rights because it breached the plea agreement when it sentenced him to five years in prison, despite the fact that the plea agreement stated that the parties agreed to a three-year prison term. Doc. 1-1, pp. 5-10. He does not dispute that the state recommended a three-year prison term at sentencing; he only objects that the trial court did not follow that recommendation. He submits that when a court accepts a plea agreement and fails to honor it, the plea agreement becomes void. Doc. 1-1, pp. 6-7 (citing *State v. Anderson*, 2014-Ohio-4699 (Oh. Ct. App. 2014)).

The Ohio Court of Appeals considered Love's claim:

7

> {¶ 16} The transcript of the February 11, 2013 plea hearing establishes that the trial court engaged in a full and complete colloquy with appellant concerning his pleas as required by Crim.R. 11(C)(2).
>
> {¶ 17} [Love] further acknowledged that the court was not required to follow any recommended sentence. Appellant also acknowledged that he was aware of the possible sentences and fines associated with a third-degree felony. The court also informed appellant that the charges carried a presumption for prison under the sentencing statutes.
>
> ***
>
> {¶ 22} As we previously noted, the trial court is not bound by the terms of a plea agreement. Further, the court forewarned appellant at the plea hearing of February 11, 2013. Under these circumstances, a court does not abuse its discretion by failing to follow that recommendation. *State v. Warith*, 6th Dist. Lucas No. L–02–1240, 2003–Ohio–6367. This court has further held that when a defendant fails to appear at sentencing, the state no longer is required to comply with the plea agreement. *State v. Payton*, 6th Dist. Erie Nos. E–09–070, E–09–071, 2010–Ohio–5178. Furthermore, in this instance, there is nothing in the record to indicate that the state was requesting a greater sentence than it had agreed to three years prior. Therefore, appellant's first and second assignments of error are found to be without merit.

*Love*, 2017 WL 2841683, at *2-3.

Love argues that the Ohio Court of Appeals stated that his plea agreement "only included a sentencing recommendation, but Love asserts the record clearly shows the plea negotiation ended in a Plea Agreement ... that induced Love into accepting the plea agreement, thereby making it a binding contract." Doc. 1-1, p. 7. The undersigned disagrees that the three-year sentence referenced in Love's plea agreement was more than a recommendation; the plea agreement expressly states, "Agreed '*Recommended*' Sentence: Parties agree to 3yr prison sentence." Doc. 8-1, p. 15 (emphasis in original). Moreover, as the Ohio Court of Appeals observed, during the plea hearing the following colloquy occurred:

> COURT: Do you understand any recommended sentence the Court will consider, but the Court is not required to follow?
>
> MR. LOVE: Yes, Your Honor.
> ***
> COURT: Now, you're pleading guilty to three felonies of the third degree and there's two different levels of felonies of the third degree. This is the lower level. This possible -- the possible sentence for this felony of the third degree is 9, 12, 18, 24, 30, or 36 months and

8

>a fine of no less than $5,000 nor more than $10,000 on each count. So, in effect, you're looking at 9 years in prison and $30,000 in mandatory fines. Do you understand that?
>
>MR. LOVE: Yes, Your Honor.
>
> ***
>
>COURT: Okay. Has there been anything stated off the record, outside of the Courtroom, about this plea agreement you think this Judge should know about?
>
>MR. LOVE: No, Your Honor.
>
>COURT: Did anyone promise you, offer you, or guarantee you anything in exchange for this plea?
>
>MR. LOVE: No, Your Honor

Doc. 8-2, pp. 9, 16-17.

Love identifies the following portion of the plea hearing transcript that, he alleges, supports his contention that the three-year recommendation was a binding contract:

>COURT: If you want to appeal, you have to file a document called Notice of Appeal and you have to file that Notice within 30 days of the journalization of the sentencing entry. If you don't file it within those 30 days, you have then waived, forfeited, or given up your right to appeal. Do you understand that?
>
>MR. LOVE: Yes, Your Honor.
>
>COURT: Also, if the Court goes along with this agreed sentence and imposes the three years, if later in prison you want to appeal and you say, hey, maybe I should have only got a year or something less, the Court of Appeals is going to say you agreed to that. The Court went along with it. You're stuck with it. Do you understand that?
>
>MR. LOVE: Yes, Your Honor.

Doc. 8-2, pp. 12-13. The trial court's statement—"if the Court goes along with this agreed sentence"—does not support Love's assertion that the three-year sentence was binding on the trial court. Rather, it supports a finding to the contrary; i.e., the three-year sentence was a recommendation that the trial court could chose to follow or deviate from. In short, Love does not rebut the state court's factual finding by clear and convincing evidence that his plea agreement carried the promise of the state recommending a three-year sentence, rather than an

9

actual promise that he would receive a three-year sentence. *Burt v. Titlow*, 571 U.S. 12, 18 (2013) ("when a federal habeas petitioner challenges the factual basis for a prior state court decision rejecting a claim, the federal court may overturn the state court's decision only if it the petitioner can show, by clear and convincing evidence, that the decision was 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[,]'" citing 28 U.S.C. § 2254(d)(2) and (e)).

Moreover, the Ohio Court of Appeals' decision was not an unreasonable application of clearly established federal law. None of the cases cited by Love is a United States Supreme Court decision that holds that a due process violation occurs when a trial court does not follow the recommended sentence in a plea agreement. *See Woods v. Donald*, 135 S.Ct. 1372, 1377 (2015) (For the Ohio Court of Appeals' decision to be "contrary to" a Supreme Court holding, there must be a Supreme Court case that "confronts the specific question presented by this case."); *see also Carwile v. Smith*, 874 F.2d 382, 385-386 (6th Cir. 1989) (rejecting federal habeas petitioner's claim that his due process rights were violated when the state trial court imposed a harsher sentence than the agreed upon sentencing recommendation in the plea agreement; "There is a critical difference between an entitlement and a mere hope or expectation that the trial court will follow the prosecutor's recommendation[,]" quoting *Mabry v. Johnson*, 467 U.S. 504, 507 n. 5 (1984)); *Kelly v. Miller*, 2011 WL 400150, at *9-10 (N.D.Ohio Jan. 7, 2011) ("Kelly's hope that the trial judge would agree to the prosecutor's recommended sentence did not convert that recommendation into a promise at the time of his plea, nor does it now create a viable constitutional claim in this [federal habeas] Court.").[1]

Finally, Love's apparent argument that the trial court did not comply with state law principles when it deviated from the plea agreement is not cognizable on federal habeas review.

---

[1] Report & recommendation adopted, 2011 WL 441771 (N.D.Ohio Feb. 4, 2011).

10

*See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Carwile*, 874 F.2d at 385 (rejecting the petitioner's challenges to state court's interpretation of state law regarding the trial court's rejection of an agreed sentencing recommendation; "[W]hile this fact may be of interest to Kentucky courts and legislators, it is not controlling as far as our constitutional inquiry is concerned.").

Ground One fails on the merits.

**B. Ground Two fails on the merits**

In Ground Two, Love argues that he was deprived of the effective assistance of counsel during his sentencing hearing. Doc. 1, p. 6. He explains that counsel was ineffective when he failed to object when the trial court "failed to honor the negotiated plea agreement that induce[d] Love into accepting the State's plea offer." Doc. 1-1, p. 13. The Ohio Court of Appeals applied the two-part standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), to Love's claim. *Love*, 2017 WL 2841683 at *3. In rejecting his claim, it concluded, "We have thoroughly reviewed the record of the proceedings below and can find nothing to establish any deficiency in the performance of appellant's trial counsel." *Id*.

The Ohio Court of Appeals applied the correct legal standard to Love's claim. Its rejection of Love's claim was reasonable for the reasons explained above in Ground One; namely, that the trial court had discretion to deviate from the recommended plea. Furthermore, the record shows that counsel presented factors in mitigation of Love's failure to appear at his original sentencing date three years prior (he was living in Michigan, he had a newborn child, his grandmother had just passed away, his father was hospitalized after suffering a heart attack, his family had financial difficulties, he began running his father's construction business, he waived extradition to Ohio after his arrest in Pennsylvania, and he intended to return to Michigan, seek

11

employment, and provide for his family). Doc. 8-4, pp. 7-10. Counsel asked that the trial court impose the agreed upon recommended sentence of three years. Doc. 8-4, p. 9. Counsel was not constitutionally ineffective for failing to argue with the trial court when the trial court, within its discretion, deviated from the recommended plea agreement and sentenced Love to five years in prison, especially considering that Love faced a possible nine-year prison sentence. Ground Two fails on the merits.

### C. Ground Three is not cognizable

In Ground Three, Love argues that the trial court violated Ohio Crim. R. 50(A) and (B) when it failed to inform him that he could withdraw his plea before sentencing. Doc. 1, p. 8. He states, "Love concedes that he failed to inquire as to rather [sic] he could withdraw his plea prior to sentencing being imposed," due to his "justified belief" that he would receive a three-year sentence. Doc. 1-1, p. 15. He explains that he "now relies upon Crim. R. 52(A) and (B)," which sets forth the harmless error and plain error standards. Doc. 1-1, pp. 15-16.

The Ohio Court of Appeals observed that Ohio Crim. R. 50(A) and (B) do not establish a right to be informed of the ability to seek leave to withdraw a plea and rejected his claim. *Love*, 2017WL 2841683, at \*4. Love has not challenged this finding. Nor has he provided legal authority that a claim of "plain error" is cognizable on federal habeas review. Finally, under a plain error standard, Love must show that the outcome would have been different had the trial court advised him he could move to withdraw his guilty plea before sentencing, and Love cannot make this showing because he concedes that he would not have withdrawn his guilty plea before sentencing. *See State v. Barnes*, 759 N.E.2d 1240, 1247 (Ohio 2002) (Ohio Crim. R. 52 has been interpreted to mean that the trial court's error must have affected the outcome).

Ground Three is not cognizable.

### D. Ground Four is not cognizable and fails on the merits

12

In Ground Four, Love argues that the trial court erred when it imposed consecutive sentences for three counts of aggravated possession of drugs, in violation of R.C. 2941.25. Doc. 1, p. 9; Doc. 1-1, p. 18. He asserts that the three counts are allied offenses because the drugs, Oxymorphine and Oxycodone, are from the same drug family. Doc. 1-1, pp. 17-18. This ground is not cognizable because Love is challenging Ohio law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States").

To the extent the Court interprets Ground Four as a raising a claim regarding the Double Jeopardy Clause of the Fifth Amendment, Love's claim fails on the merits. As relevant here, the Double Jeopardy Clause protects against multiple punishments for the same offense. *See Volpe v. Trim*, 708 F.3d 688, 696 (6th Cir. 2013). This means that a sentencing court may not punish a defendant more than once for a single act when the legislature does not intend for such a punishment. *Id*. (citing *Albernaz v. United States*, 450 U.S. 333, 334 (1981); *Missouri v. Hunter*, 459 U.S. 359, 366 (1983); *White v. Howes*, 586 F.3d 1025, 1035 (6th Cir. 2009)). A federal habeas court is bound by the state court's construction of its own state's statutes, including those regarding cumulative punishments. *Id*.; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.").

The Ohio Court of Appeals considered Love's claim and explained,

> {¶ 27} We have recently held in *State v. Henderson*, 6th Dist. WD–16–012, 2017–Ohio–2900, ¶ 33–34:
>
>> Recently, the Supreme Court of Ohio expounded upon its holding in *Johnson*, stating:
>>
>> As a practical matter, when determining whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25, courts must ask three questions when a defendant's conduct supports multiple offenses: (1) Were the

13

> offenses dissimilar in import or significance? (2) Were they committed separately? and (3) Were they committed with separate animus or motivation? An affirmative answer to any of the above will permit separate convictions. The conduct, the animus, and the import must all be considered. *State v. Ruff*, 143 Ohio St.3d 114, 2015–Ohio–995, 34 N.E.3d 892, ¶ 31.
>
> We review the trial court's merger determination under R.C. 2941.25 de novo. *State v. Williams*, 134 Ohio St.3d 482, 2012–Ohio–5699, 983 N.E.2d 1245, ¶ 28.
>
> {¶ 28} In this case before the court, the record establishes that the controlled substances involved in Count 2 of the indictment was Oxymorphone. The controlled substances of Count 4 was Oxycodone packaged in a sealed Ziploc bag described as round blue tablets. In contrast, the substance of Count 6 was Oxycodone, found in a Ziploc bag but described as oblong white tablets.
>
> {¶ 29} At sentencing, the court did not merge the counts of possession of Oxycodone under Counts 4 and 6 but did run the sentences concurrent to each other.
>
> {¶ 30} However, since the substance involved with Count 2 was Oxymorphone, a different substance than either Counts 4 or 6, the trial court had discretion to impose the Count 2 sentence with the remaining counts.
>
> {¶ 31} Therefore, this assignment of error presented by appellant is not[] well-taken.

*Love*, 2017 WL 2841683, at *4.

Love does not dispute that Oxycodone and Oxymorphone are different drugs. His assertion that these two drugs allegedly belong to the same drug family does not override this fact. This Court is bound by the Ohio Court of Appeals' interpretation of state statutes regarding R.C. 2941.25. *See Bradshaw*, 546 U.S. at 76; *see also State v. Houston*, 2013 WL 772800, at *13 (Oh. Ct. App. Feb. 7, 2013) (rejecting defendant's challenge that his state law violations involving Oxycodone and Oxymorphone were allied offenses per R.C. 2941.25; the charges involved different amounts of different drugs and the legislature intended the possession of different drug groups to constitute different offenses, citing *State v. Delfino*, 490 N.E.2d 884 (Ohio 1986)); *State v. Huber*, 2011 WL 6009604, at *2 (Oh. Ct. App. Dec. 2, 2011) (convictions for possession of methadone, hydrocodone, oxycodeine, and acetaminophen with codeine did not merge; the state legislature intended the possession of different drug groups to constitute

14

different offenses, relying on *Delfino*).

Ground Four is not cognizable and fails on the merits.

**E. Ground Five is not cognizable**

In Ground Five, Love argues that the trial court abused its discretion when it imposed consecutive sentences. Doc. 1, p. 14; Doc. 1-1, p. 19. He complains that the trial court's findings regarding R.C. 2929.14(C)(4)(c) were refuted by the record. Doc. 1-1, pp. 20-21. This ground is not cognizable because Love is challenging the trial court's application of Ohio sentencing law. *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States"); *Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000) (an alleged violation of state sentencing laws is not cognizable on federal habeas review, citing *Pulley v. Harris*, 465 U.S. 37, 41 (1984)). Moreover, Love makes no showing that the trial court's findings pursuant to R.C. 2929.14(C)(4)(c) were refuted by the record. Ground Five is not cognizable.

**F. Ground Six fails on the merits**

In Ground Six, Love argues that the trial court erred when it denied his motion for additional jail time credit in violation of R.C. 2967.191 and Ohio case law. Doc. 1, p. 14; Doc. 1-1, pp. 22-24. He asserts that he should receive jail time credit "for every day of confinement from the day the Allegheny County arrest[ed] Love on an Erie County Common Pleas Court Fugitive Warrant, until the completion of that Allegheny County litigation." Doc. 1-1, p. 25.[2] The Ohio Court of Appeals rejected Love's claim, explaining,

> Although Erie County placed a holder on Love while he was awaiting adjudication in Pennsylvania for crimes committed in that state, the charges that facilitated Love's arrest

---

[2] Love asserts that he was held in Allegheny County, Pennsylvania, for six months pursuant to the fugitive warrant issued by the Erie County, Ohio, Common Pleas Court. Doc. 1-1, p. 26. This is incorrect; he spent six months in prison in Allegheny County because he faced felony charges there relating to his unlawful possession of a firearm. See, e.g., Allegheny County Court of Common Pleas, Court Summary, Case No. OTN:G7182114 (cited by Love, Doc. 1-1, p. 26).

15

> in Pennsylvania were unrelated to the charges committed in Erie County. Therefore, Love is not entitled to jail-time credit for time served in Pennsylvania.

Doc. 8-1, p. 333.

Love does not explain how the Ohio Court of Appeals' determination is unreasonable; he only disagrees with the court's conclusion. His reliance upon *State v. Fugate*, 883 N.E.2d 440 (Ohio 2008), is unavailing because that case involved the calculation of jail time credit applied to concurrent sentencing terms. Love is not arguing that jail time was credited to one of his concurrent sentences but not the other. His reliance upon *State v. Caccamo*, 2016 WL 2865360 (Ohio Ct. App., 11th Dist., May 16, 2016) is equally unavailing. *Caccamo* involved a complicated interplay between community control violation sentences and is somewhat of an outlier. *See, e.g., State v. Garver*, 81 N.E.3d 486, 489-490 (Oh. Ct. App., 11th Dist, 2017) (clarifying the holding in *Caccamo* and confining that case to its specific facts when ruling that the time that Garver spent in a Missouri prison on Missouri charges did not entitle her to good time credit for unrelated charges in Ohio, even though the Ohio county had placed a holder on her to secure her appearance in Ohio county court; "As this court has previously noted 'there is no jail-time credit for time served on unrelated offenses, even if that time served runs concurrently during the pre-detention phase of another matter.'"); *see also State v. Holley*, 88 N.E.3d 1290, 1293 (Oh. Ct. App., 8th Dist, 2017)("The Eleventh District in *Caccamo* went against its own precedent .... We disagree with *Caccamo* and instead rely on the cases from our district that hold that there is no jail-time credit for time served on unrelated offenses, even if that time runs concurrently during the pre-detention phase of another matter" (collecting cases)).

In short, it cannot be said that the Ohio Court of Appeals' decision in Love's case "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement." *Harrington*, 562 U.S. at 103.

16

Ground Six fails on the merits.

## IV. Conclusion and Recommendation

For the reasons stated above, the undersigned recommends that Love's habeas Petition be **DENIED**.

Dated: June 25, 2019

/s/ *Kathleen B. Burke*
Kathleen B. Burke
United States Magistrate Judge

## OBJECTIONS

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).